IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| HARRY HAMILTON LOTTS, JR., ) | | |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | Civil Action No. 5:13-cv-00071 | |
| ) | | |
| CAROLYN W. COLVIN, ) | | |
| Acting Commissioner of Social Security, ) | By: | Joel C. Hoppe |
|     Defendant. ) | | United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Harry Hamilton Lotts, Jr., brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). On appeal, Lotts argues that the ALJ failed to properly evaluate the opinion of a physician's assistant and that the Appeals Council failed to properly evaluate the opinion of his treating physician. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g), and this case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). After carefully reviewing the record, I find that the ALJ's decision was based on substantial evidence and respectfully recommend that the Commissioner's decision be affirmed.

I.    Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final determination that a person is not entitled to disability benefits. *See* 42 U.S.C. §§ 405(g); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether substantial evidence supports the ALJ's factual findings and

whether the ALJ applied the correct legal standards. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence," *id*., but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *see also Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled.'" *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal quotation marks omitted)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and if not (5) whether he or she can perform other work. *See* 20 C.F.R. § 404.1520(a)(4); *see also Heckler v.*

*Campbell*, 461 U.S. 458, 460–462 (1983). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Lotts was born in 1964 (Administrative Record, hereinafter "R." 38), and during the relevant period was considered a "younger" individual under the Act. 20 C.F.R. § 404.1563(b), (c). Lotts has a high school education and has worked as an insulation installer, pizza delivery driver, and forklift operator. (R. 38, 156, 205–08.) Lotts alleges that he became disabled on January 10, 2009, due to a degenerative back disorder and inflammatory bowel disorder. (R. 23, 25, 155.) After the Commissioner rejected Lotts's application initially and upon reconsideration, a hearing was convened before an Administrative Law Judge ("ALJ") at Lotts's request. (R. 23, 44–47.)

On March 28, 2012, the ALJ issued his decision finding Lotts not disabled under the Act. (R. 23–39.) The ALJ found that Lotts had severe discogenic/degenerative back disorder and inflammatory bowel disorder, but that his impairments did not meet or medically equal the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25–26.) The ALJ found that Lotts retained the residual functional capacity to perform light work except that he could stoop, crawl, kneel, crouch, or climb ramps or stairs only occasionally and never climb ladders, ropes, or scaffolds. (R. 26–38.) In his RFC assessment, the ALJ considered the opinions of several doctors, including Lotts's primary care physician Dr. John O. "Rob" Marsh, as well as the opinion of physician's assistant Kenneth Perkins, who works for Marsh. (R. 37–38.) Although the ALJ found Lotts incapable of his past relevant work, he also found, based on the testimony of a vocational expert, that Lotts could perform jobs existing in significant numbers in the national economy. (R. 38–39.) He therefore found Lotts not disabled under the Act. (R. 39.)

On April 5, 2012, Lotts requested that the Appeals Council review the ALJ's unfavorable decision. (R. 19.) While the case was pending before the Appeals Council, Lotts's counsel submitted a letter dated May 17, 2012, from Dr. Marsh in which Dr. Marsh opines that Lotts's condition has worsened over the last year rendering him "unemployable." (R. 648.) The Appeals Council denied review. (R. 1–5.) In its notice informing Lotts of that decision, the Appeals Council indicated that it "considered" Dr. Marsh's letter, and also "considered whether the [ALJ]'s action, findings, or conclusion is contrary to the weight of evidence of record," but that it "found that this information does not provide a basis for changing the [ALJ]'s decision." (R. 1–2.) Lotts sought review in this court of the ALJ's decision, which became final by virtue of the Appeals Council's denial of review.

III.  Discussion

Lotts makes two arguments on appeal. First, he argues that the ALJ erred in failing to properly consider the opinion of Kenneth Perkins, a physician's assistant who works for his treating physician Dr. Marsh. (Pl. Br. 16–17.) Second, he argues that the Appeals Council erred in failing to consider Dr. Marsh's May 17 letter, and that this letter constitutes new, material, and time-period relevant evidence that warrants remand under *Wilkins v. Secretary of Health and Human Services*, 953 F.2d 93 (4th Cir. 1991) (en banc). (Pl. Br. 9–16.)

A.  *Opinion of Physician's Assistant*

  1.  *Relevant Facts*

Dr. Marsh and P.A. Perkins have been treating Lotts since August 2008. (R. 641.) P.A. Perkins provided care to Lotts at regular visits throughout the relevant period. (R. 311–14, 317–18, 327–28, 488–96, 526, 615–23, 630–31.) Both P.A. Perkins and Dr. Marsh provided opinions regarding Lotts's functional ability. (R. 606–09, 641–45.)

4

Lotts's prior counsel submitted a "Physical Residual Functional Capacity Questionnaire" ("RFC Questionnaire") signed by P.A. Perkins and Dr. Marsh on February 2, 2012. (R. 641-45.)[1] The RFC Questionnaire indicates that Lotts has diagnoses of degenerative joint disease and degenerative disc disease in his lumbar, thoracic, and cervical spine with poor prognosis. (R. 641.) With medication, Lotts's pain is a 5 out of 10 in his lower back, 4.5 out of 10 in his neck, and 6 out of 10 in his middle back. (*Id.*) His pain radiates into his legs and knees as well as his shoulders and arms. (*Id.*) The pain is constant and is worsened by prolonged standing, sitting, driving, climbing stairs, and lifting even light objects. (*Id.*) Lotts demonstrates positive straight-leg raise test bilaterally at 20 degrees and atrophy of lumbosacral muscles and quadriceps. (*Id.*) Lotts's pain medication causes drowsiness and dizziness, interferes with his mental functioning, and makes him nauseous. (R. 641, 645.) Lotts's chronic pain, which has bothered him for more than three years, has led to depression, which in turn contributes to the severity of his symptoms and functional limitations. (R. 642.) His pain constantly interferes with the attention and concentration needed to perform even simple work tasks. (*Id.*) Lotts also has a low tolerance for stress and is hard of hearing. (R. 642, 645.)

P.A. Perkins and Dr. Marsh also indicate that Lotts suffers from significant functional limitations. (R. 642–45.) Lotts is incapable of walking a single city block without resting and can only sit 10–15 minutes and stand five minutes without changing positions. (R. 642–43.) He could sit for up to an hour and stand or walk for up to an hour during a normal eight hour work day, but no more. (R. 643.) Lotts would also need to walk around for one to two minutes every 15–20

---

[1] Lotts's prior counsel submitted two versions of the questionnaire on February 3, 2012 (R. 605-09), and March 6, 2012 (R. 641-45), both of which were signed by Dr. Marsh and P.A. Perkins. The latter version contains a page 4 that the prior version did not. The latter version also contains an additional signature page signed only by P.A. Perkins. (R. 646.)

minutes, and he requires a cane to walk. (*Id.*) For 10 minutes each hour, Lotts would have to elevate his legs to heart level. (*Id.*) Lotts can lift less than 10 pounds rarely but never lift 10 pounds or more. (*Id.*) He can occasionally perform postural activities, except that he can never climb ladders, crouch, or squat and can only rarely twist or stoop. (R. 644.) He cannot reach overhead and he can grasp, turn, and twist objects with his hands only 10% of the time and perform fine manipulation with his fingers only 20% of the time. (*Id.*) Lotts's bad days outnumber his good days, and he would be absent many more than four days per month due to his impairments or treatment. (*Id.*) Lotts is also intolerant of temperature extremes. (R. 645.)

The ALJ discussed both Dr. Marsh's and P.A. Perkins's opinions in his decision. He gave Dr. Marsh's opinion "little weight" because Dr. Marsh's assessment was "inconsistent with his findings upon examination" and because "Dr. Marsh apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Lotts]." (R. 36, 37.) The ALJ stated that he "considered" P.A. Perkins's opinion, but noted that Perkins "is not considered an acceptable medical source as defined by 20 C.F.R. § 404.1513 and 416.913. As such, [his opinion] is given appropriate weight." (R. 37.)

Earlier in his opinion, the ALJ found Lotts's statements about the intensity, persistence, and limiting effects of his pain and other symptoms not fully credible. The ALJ noted that Lotts has "been prescribed and taken appropriate medications for [his] alleged impairments, which weighs in the claimant's favor," but that Lotts's treatment "has been essentially routine or conservative in nature and that the medications have been relatively effective in controlling [his] symptoms." (R. 37.) The ALJ noted that Lotts's treatment fell short of what "one would expect for a totally disabled individual," which "suggests that [his] symptoms may not have been as limiting as … alleged." (*Id.*) Moreover, the ALJ noted, Lotts "failed to follow up on

6

recommendations made by [his] specialists, including aquatic physical therapy, injections, and recommended surgery, as well as reduction in narcotic pain medication." (*Id.*) Finally, the ALJ noted that Lotts's "description of [his] symptoms is unusually severe and [has] been noted to be atypical for the impairments which are documented by medical findings in this case." (*Id.*)

2. *Analysis*

An ALJ must consider and evaluate all opinions from "medically acceptable sources," such as doctors, in the case record. 20 C.F.R. § 404.1527. "Medical opinions are statements from … acceptable medical sources that reflect judgments about the nature and severity of [the applicant's] impairment(s)," including: (1) the applicant's symptoms, diagnosis, and prognosis; (2) what the applicant can still do despite his or her impairment(s); and (3) the applicant's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). In determining what weight to afford a doctor's opinion, the ALJ must consider all relevant factors, including the relationship between the doctor and the patient, the degree to which the opinion is supported or contradicted by other evidence in the record, and whether the doctor's opinion pertains to his area of specialty. 20 C.F.R. § 404.1527(c).

Opinions from physicians who have treated the patient are generally afforded more weight, because treating sources are "most able to provide a detailed longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). An ALJ must give a treating source opinion "controlling weight" to the extent that the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and … not inconsistent with the other substantial evidence in the record." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); 20 C.F.R. § 404.1527. Even when a treating source opinion is less than "well-supported" by diagnostic techniques, it is still entitled to a measure of deference. *Tucker v. Astrue*, 897 F. Supp.

2d 448, 465 (S.D.W. Va. 2012) (citing Social Security Ruling 96-2p). However, an ALJ may reject a treating physician's opinion in whole or in part if there is "persuasive contrary evidence" in the record. *Hines*, 453 F.3d at 563 n. 2; *Mastro*, 270 F.3d at 178; *Tucker*, 897 F. Supp. 2d at 465. The ALJ may give "significantly less weight" to a treating physician's "conclusory opinion based on the applicant's subjective reports." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ also may discount a treating physician's conclusory opinion when it is inconsistent with the applicant's daily activities. *Dennison v. Astrue*, 5:10-cv-109, 2011 WL 2604847, at *2 (W.D. Va. July 1, 2011) (citing *Craig*, 76 F.3d at 590). When an ALJ gives less than controlling weight to a treating physician's opinion, the treating source rule requires him to specify how much weight he gives the opinion and offer "good reasons" for that decision. 20 C.F.R. § 404.1527(c)(2).

Opinions on issues "reserved to the Commissioner," such as whether a person is disabled, are not considered "medical opinions" entitled to any special weight under the regulations. 20 C.F.R. § 404.1527(d)(1); Social Security Ruling ("SSR") 96-5p, 1996 WL 374183; *Huff v. Astrue*, No. 6:09cv42, 2010 WL 5296842, at *5 (W.D. Va. Nov. 22, 2010). At the same time, statements from treating physicians on issues reserved to the commissioner are relevant and often important evidence. The ALJ must evaluate these statements in light of the whole record to determine the extent to which the opinion is supported by the record, considering the same factors used to evaluate "medical opinions." SSR 96-5p, at *3; *see also* 20 C.F.R. § 404.1527(c).

Although P.A. Perkins is not an "acceptable medical source," his opinion may still warrant consideration as an opinion from an "[other] medical source." 20 C.F.R. § 404.1513(d)(1) (noting that the agency "may also use evidence from other sources" including "nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists, and

8

therapists," in evaluating disability); Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939. Opinions from other medical sources "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, at *3. The same factors used to evaluate medical opinions identified in § 404.1527(c)—scope of the relationship with the patient, consistency, support, quality of explanation, specialty, and other relevant factors—may be applied to opinion evidence from other medical sources, although not every factor will be relevant in every case. *Id.* at *4–5. An ALJ must consider relevant evidence from other medical sources. *Woods v. Commissioner*, No. 6:12-cv-0014, 2013 WL 4678381, at *6 (W.D. Va. Aug. 30, 2013). Furthermore, an ALJ "generally should explain the weight given to opinions from [other medical sources], or otherwise ensure that the discussion of the evidence … allows [a reviewing court] to follow the adjudicator's reasoning, when such opinions may have an effect on the case." SSR 06-03p, at *6; *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (holding that ALJ's consideration of medical evidence was "more than adequate," even though ALJ failed to discuss physical therapist's report).

The ALJ's announcement that he gave Perkins's opinion "appropriate weight" leaves the Court guessing as to how much weight the ALJ thought was appropriate. *See Wilbourn v. Astrue*, No. 6:08-cv-00025-NKM, 2009 WL 2381305, at *7 (W.D. Va. Jul. 31, 2009) (Urbanski, J.) ("While the decision states that Dr. Oliver's opinion 'has been considered,' and 'is given appropriate weight,' it is difficult to discern just what weight was accorded Dr. Oliver's opinion."). This statement provides no guidance as to the ALJ's actual finding. *See Lewis v. Colvin*, Civ. No. CBD-11-1423, 2013 WL 6839505, at *6 (D. Md. Dec. 23, 2013); *Reynolds v. Commissioner*, No. 6:10-cv-1682-Orl-GJK, 2012 WL 682462, at *11 (M.D. Fla. Mar. 2, 2012)

(citing *Varner v. Astrue*, No. 3:09-cv-1026-J-TEM, 2011 WL 1196422, at *11 (M.D. Fla. Mar. 29, 2011))).

However, the ALJ's cursory analysis was harmless error—if it was error at all. P.A. Perkins was not an acceptable medical source, so the ALJ was not required by the regulations to explain the weight given to his opinion. *Cf.* 20 C.F.R. § 404.1527(e)(2)(ii) ("Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant … as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."). By contrast, SSR 06-03p does not expressly require an ALJ to explain his evaluation of opinions from other non-acceptable medical sources, but indicates only that "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." And although the Fourth Circuit has held that ALJs must "explicitly indicate the weight given to relevant evidence," *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989), it has not always strictly enforced this requirement as applied to the statements of "other sources," *see Craig*, 76 F.3d at 590 (holding that ALJ's consideration of medical evidence was "more than adequate," even though ALJ failed to discuss physical therapist's report).

More importantly, the ALJ considered the substance of P.A. Perkins's opinion when he evaluated Dr. Marsh's opinion two paragraphs earlier. (R. 37.) He gave Dr. Marsh's opinion "little weight" because Dr. Marsh's assessment was "inconsistent with his findings upon examination" and because "Dr. Marsh apparently relied quite heavily on the subjective report of

symptoms and limitations provided by [Lotts]," who the ALJ earlier found less than fully credible. (R. 36, 37.) The assessment the ALJ was referring to was the RFC Questionnaire on pages 641–645 of the Record, which is signed by both Dr. Marsh and P.A. Perkins and is identical to the one on pages 606–609 that Lotts faults the ALJ for failing to evaluate. The ALJ considered the RFC Questionnaire as an opinion from Dr. Marsh, so there was no reason for him to evaluate it again as an opinion from P.A. Perkins.

Moreover—and Lotts does not argue otherwise—substantial evidence supports the ALJ's decision to give Dr. Marsh's opinion little weight. As the ALJ noted, Dr. Marsh and Dr. Perkins based their opinions largely on Lotts's subjective complaints rather than on any objective evidence. The objective evidence in this case in fact suggests only mild impairments: MRIs, x-rays, and CT scans of Lotts's lumbar and cervical spine showed "mild," "minimal," "slight," or "small" deviations from normal. (R. 286–93, 299, 300, 305–08, 332–33, 337–38, 397–403, 454–56, 463–64, 529–31, 534, 626.) Electrophysiologic evidence has likewise shown at most "mild" findings. (R. 423–29, 509–10, 535–36.)

The ALJ also properly noted Lotts's conservative treatment in assessing the credibility of his complaints of pain and, by extension, the credibility of his physicians' statements which were based on those complaints. Lotts's back problems have been treated largely with medication, rather than more serious treatment options like back surgery. In January 2011, Dr. Justin Smith at UVA noted that he "did not see an area to address surgically." (R. 384–85.) Seven months later, Dr. Harold Young at VCU noted that Lotts was a candidate for lumbar laminectomy, but only if he reduced narcotic pain medication. (R. 611–13.) However, in December 2011, Dr. Sarah Kneivel at Augusta Health Pain Management Clinic noted that Lotts "seem[ed] more interested

in pursuing disability" than in cutting back on his pain medication and proceeding with surgery. (R. 542–48.)

Finally, the ALJ also properly considered statements from other medical providers that Lotts's complaints were unusually severe for someone with his medical findings. (R. 37.) Most notably, Dr. Young noted that Lotts's pain was "way out of proportion or more severe than I can account for" based on MRI scans, and that Lotts's lumbar stenosis was "certainly no more than moderate in degree and is not the type we usually see with very severe symptoms of lumbar stenosis." (R. 611–13.)

B.  *New Evidence*

After the ALJ issued his decision, Lotts submitted a letter from Dr. Marsh to his attorney discussing Lotts's medical condition and opining that Lotts is disabled. (R. 648.) The body of the letter reads:

> As primary care physician responsible for the medical care of Mr. Harry Lotts, Jr., I have written this letter to discuss his current medical condition.
>
> I have followed Mr. Lotts for the past five years for his neck and lower back pain. I note that his pain has gotten increasingly worse. I am especially concerned with his difficulty ambulating. He now has radicular pain going down both legs, right seems to be worse than left. He has difficulty climbing stairs and walking short distances. He cannot stand for any prolonged period of time. In the past he has been treated at the Pain Management at Augusta Health, however, I have been concerned that he has worsened and I have taken over the care of his lower back. I believe it is important to do several levels of studies: A repeat C-spine MRI and a repeat lumbar spine MRI. It is my medical opinion that his condition has worsened over the past year causing him to be unemployable. I also plan to get another EMG of his lower extremities to document the worsening of his leg function, as well as for guidance as to whether or not he needs surgical intervention.
>
> I fear that his worsening symptoms have a poor prognosis for recovery and he may have even more spinal issues that would further restrict his activities. It is my medical opinion that Mr. Harry Lotts, Jr. has severe degenerative spinal disc disease with neurological involvement which continues to cause him great disability. I will keep you apprised as to further studies that are pending.

12

(R. 648.) Lotts argues that the Appeals Council erred in summarily rejecting this evidence. (Pl. Br. 9–16.)

When, after an unfavorable ALJ decision, a claimant offers new and material evidence to the Appeals Council, the Appeals Council must consider that evidence if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b); *Wilkins v. Sec'y of Health and Human Servs.*, 953 F.2d 93, 95 (4th Cir. 1991) (en banc). "Evidence is 'new' if it is not duplicative or cumulative, and is material 'if there is a reasonable possibility that the new evidence would have changed the outcome.'" *Davis v. Barnhart*, 392 F. Supp. 2d 747, 750 (W.D. Va. 2005) (quoting *Wilkins*, 953 F.2d at 95–96).

Even if it is confronted with new and material evidence that relates to the relevant period, the Appeals Council will grant review based on the new evidence only when "it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently in the record," including the newly-submitted evidence. 20 C.F.R. § 404.970(b). Lotts argues that "[t]he Appeals Council committed legal error in not giving any analysis of this evidence or in failing to remand the case to the ALJ for evaluation of the new evidence." (Pl. Br. 10.) But the Appeals Council is not required to give reasons for denying review or to explain how it considered any additional evidence a claimant has submitted. *Davis*, 392 F. Supp. 2d at 751 (citing *Freeman v. Halter*, 15 Fed. Appx. 87, 89 (4th Cir. 2001)). However, the reviewing court must consider the record as a whole, and not just the evidence before the ALJ, to determine whether substantial evidence supports the Commissioner's decision. *Wilkins*, 953 F.2d at 96; *Ridings v. Apfel*, 76 F. Supp. 2d 707, 709 (W.D. Va. 1999).

Here, the Appeals Council "considered" this letter but determined, without further explanation, that it "does not provide a basis for changing the [ALJ]'s decision." (R. 1–2.) Such

summary rejection of additional evidence makes review difficult, because the Court must examine the ALJ's decision in light of evidence that the ALJ never considered. *Ridings*, 76 F. Supp. 2d at 709; *Riley v. Apfel*, 88 F. Supp. 2d 572, 579–80 (W.D. Va. 2000) ("When this court is left in the dark as to how the Appeals Council treated the new evidence a meaningful judicial review is impossible."). The Court may not attempt to weigh the new evidence or to resolve conflicts with existing evidence. *Dunn v. Colvin*, 973 F. Supp. 2d 630, 642 (W.D. Va. 2013) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). Instead, it must determine whether the evidence was "material"—in other words, whether the evidence had "a reasonable possibility of changing the outcome of the case." *Id.* (citing *Riley*, 88 F. Supp. 2d at 579–80). If the new evidence "is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports," *id.*, then it is conceivable that the ALJ would have reached a different result upon considering it, and the court must reverse.

Dr. Marsh's letter does not require remand because it is neither new nor material. Most of the assertions in Dr. Marsh's letter regarding the severity of Lotts's impairments and their functional effects are already reflected in the RFC Questionnaire that he and P.A. Perkins signed in February 2012. Thus, the ALJ was already aware that Dr. Marsh believed that Lotts has "radicular pain going down both legs,"[2] has "difficulty ambulating" and "walking short distances,"[3] has "difficulty climbing stairs,"[4] "cannot stand for any prolonged period of time,"[5]

---

[2] *See* R. 641 (noting bilateral radiating leg pain).
[3] *See* R. 642 (indicating that Lotts can walk for 0 city blocks without severe pain), 643 (indicating that Lotts can stand or walk less than two hours in an eight hour work day).
[4] *See* R. 641 (indicating that pain is worsened by climbing stairs), 644 (indicating that Lotts can only occasionally climb stairs).
[5] *See* R. 641 (indicating that pain is worsened by prolonged standing), 643 (indicating that Lotts can stand for only 5 minutes without resting and that he can stand or walk less than two hours in an eight hour work day").

14

and has "a poor prognosis for recovery."[6] (R. 648.) Dr. Marsh's opinions regarding Lotts's prognosis are simply not relevant to the time period covered by the ALJ's decision. And Dr. Marsh's observations about appropriate future testing care (specifically, obtaining new cervical and lumbar spine MRIs, an EMG of Lotts's lower extremities, and "guidance as to whether or not he needs surgical intervention") likewise have little or no bearing on the ALJ's rejection of Dr. Marsh's opinions as expressed in the RFC Questionnaire. While Dr. Marsh says that Lotts has gotten worse over the past year, he points to no treatment records or other evidence to support this assertion. Thus, to the extent that Dr. Marsh's letter is not cumulative, it is not material because it does not raise a reasonable possibility of a different result.

Dr. Marsh's letter is also largely cumulative of the Residual Functional Capacity Assessment of Dr. Victor Lee, who took over Lotts's treatment at Augusta Pain Management Clinic from Dr. Darlinda Grice in early 2012. (R. 635–39.) Like Dr. Marsh, Dr. Lee opined that Lotts suffered from constant pain resulting in significant functional limitations. (*Id.*) The ALJ gave this opinion little weight because Dr. Lee's treating relationship with Lotts was "quite brief" and his opinion "appear[ed] to rely quite heavily on the claimant's subjective report of symptoms and limitation." (R. 37.) Lotts has not objected to the ALJ's treatment of either Dr. Marsh's or Dr. Lee's opinions.

Lotts argues that his case is like *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), where the Court of Appeals for the Fourth Circuit remanded a denial of benefits so that the agency could evaluate a treating source opinion that was provided to the Appeals Council after the ALJ's decision. *Id.* at 706–07. This case is plainly distinguishable from *Meyer* because in *Meyer*, the treating physician's opinion was actually new. The ALJ in *Meyer* "emphasized that the record

---

[6] *See* R. 641 ("Prognosis: Poor.").

15

before it lacked 'restrictions placed on the claimant by a treating physician,' suggesting that this evidentiary gap played a role in its decision. Meyer subsequently obtained this missing evidence from his treating physician." *Id.* at 707. Unlike the opinion from Meyer's treating physician, Dr. Marsh's opinion fills no "evidentiary gap." The ALJ in this case considered and rejected the RFC assessment completed by P.A. Perkins and signed by Dr. Marsh, and Dr. Marsh's letter largely rehashes the limitations set forth in the RFC Questionnaire, just in narrative form. *Cf. Breighner v. Colvin*, No. 5:13cv00016, 2014 WL 1614864, at *8 (W.D. Va. Apr. 22, 2014) ("On April 30, 2012 Dr. Stauffer essentially repeated the responses he had previously ma[d]e in the functional capacity questionnaire dated September 30, 2010. Although it was submitted to the Appeals Council as additional evidence and as part of the plaintiff's request for review, it was not 'new' evidence necessitating Appeals Council review." (internal citations omitted)).

Because Dr. Marsh's letter is not new and material evidence, remand for further consideration of that evidence is unwarranted.

IV. Conclusion

Based on this record I find that substantial evidence supports the Commissioner's decision. Accordingly, I respectfully recommend that Lotts's motion for summary judgment (ECF No. 12) be DENIED, the Commissioner's motion for summary judgment (ECF No. 17) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

**Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings

or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: June 4, 2014

Joel C. Hoppe
United States Magistrate Judge